# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------

IN RE: KWOK,
    *Debtors*

------------------------------------------

MEI GUO, HK INTERNATIONAL
FUNDS INVESTMENTS (USA)
LIMITED, LLC, LEE VARTAN, ESQ.,
and CHIESA SHAHINIAN &
GIANTOMASI PC,
    *Appellants*,

        v.

LUC A. DESPINS,
    *Trustee-Appellee.*

------------------------------------------

BANKR. NO. 22-50073 (JAM)
*Chapter 11*

CIVIL NO. 3:23-CV-375 (KAD)

APRIL 5, 2024

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Pending before the Court are the consolidated appeals[1] of Mei Guo and HK International Funds Investments (USA) Limited, LLC (the "HK Parties"), and their counsel, Attorney Lee Vartan and Chiesa Shahinian & Giantomasi PC (collectively, "Appellants"), challenging orders of the Bankruptcy Court holding the HK Parties in contempt and awarding fees as a sanction to be paid to the Chapter 11 Trustee, Luc A. Despins ("Appellee"). *See In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537; *In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Apr. 21, 2023), ECF No. 1693. For the reasons set forth below, the orders of the Bankruptcy Court are AFFIRMED.

## Facts and Procedural History

---

[1] The Court previously consolidated this appeal with *In re Kwok*, 3:23-cv-575 (KAD) upon Appellants' motion on May 23, 2023. *See* ECF No. 20.

The Court assumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant appeal. Ms. Guo is the owner of HK USA.[2] On August 17, 2022, the Trustee served a Rule 2004 subpoena on the HK Parties seeking, *inter alia*, their financial information. On September 2, 2022, the HK Parties objected to the twenty-one document requests in the subpoena because they sought information unrelated to the debtor or the debtor's estate. Specifically, as to fourteen of those requests, the HK Parties asserted that they would "neither search for nor produce documents responsive to this Request for Production as propounded." Following the objection, Ms. Guo met with her counsel, which at the time was solely Zeisler & Zeisler ("Zeisler"), to search for responsive documents on behalf of herself and HK USA. Zeisler met and conferred with counsel to the Trustee while the search was ongoing, during which Zeisler informed the Trustee that the HK Parties would not have many responsive documents. HK USA and Ms. Guo produced 372 documents and 19 documents, respectively, to the Trustee in September 2022. Ms. Guo maintained her objection to producing information related to her individual income and assets and only produced documents related to assets over which disputes over ownership presently existed, such as ownership of the Lady May yacht.

On October 28, 2022, the Trustee filed a motion pursuant to Fed. R. Civ. P. 26 and 37 and Bankruptcy Rules 2004 and 9016 to compel the HK Parties' compliance with the subpoena.[3] The HK Parties objected to the motion to compel on November 14, 2022 on the grounds that there was no evidence that their search efforts were insufficient or that they had responsive documents in their possession, and that they had not refused to search for responsive documents. The Bankruptcy

---

[2] The issue regarding the ownership of HK USA is the subject of a separate appeal, *see In re Kwok*, 3:23-cv-458 (KAD), but for the purposes of this appeal, the Court accepts this proposition as accurate.
[3] The motion to compel also sought compliance from people and entities who are not at issue in this appeal.

Court held a hearing on the Trustee's motion to compel and the HK Parties' objection on November 30, 2022.

On January 13, 2023, Attorney Vartan and other members of Chiesa Shahinian & Giantomasi PC entered appearances on behalf of the HK Parties.

On January 20, 2023, the Bankruptcy Court entered an order compelling production which granted the motion to compel in part. The Bankruptcy Court directed the HK Parties to produce to the Trustee the following by 5:00PM on January 31, 2023:

> (i) documents responsive to the Trustee's requests, except as to the documents that concern the Lady May, dated June 1, 2014, or later, unless a particular request specifies a different time period and such time period does not begin before June 1, 2014; (ii) documents responsive to the Trustee's requests, except as the documents concern the Lady May, as to both assets the Debtor acknowledges he owns and assets that allegedly belong to persons or entities other than the Debtor, including without limitation his family members, including Mei Guo herself, and associated entities, including HK (USA) itself; and (iii) documents responsive to the Trustee's requests that are within their custody, possession, or control, except as to the documents [that] concern the Lady May, including without limitation documents in the files of their current or former counsel and other agents and advisors, unless such documents have already been produced by their current or former counsel and other agents and advisors but without consideration of any potential future production by their current or former counsel and other agents and advisors.

*In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Jan. 20, 2023), ECF No. 1353 at 4 (hereinafter, "Order Compelling Production"). Thereafter, the HK Parties began to take steps to comply with the Order Compelling Production, including searching for hard copy records and inventorying electronic records. Attorney Vartan reiterated to the Trustee that they did not believe there would be a significant number of documents responsive to the subpoena that were not already produced but that the HK Parties needed additional time to review and produce. Also on January 20, 2023, the Trustee took Ms. Guo's deposition, at which Attorney Vartan was present.

On February 10, 2023, the Trustee filed a motion for an order to show cause why the HK Parties should not be held in contempt for their failure to comply with the Order Compelling

Production. That same day, the HK Parties filed an untimely motion for extension of time to comply with the Order Compelling Production, wherein they requested an additional thirty days to collect and produce the documents. Therein, the HK Parties indicated that they would begin to produce the documents in the next week and would provide additional documents on a rolling basis. The HK Parties specifically indicated that: they had begun "taking steps to comply with the Order Compelling Production"; through counsel, they had explained to the Trustee that it would be "costly and time sensitive" to confirm they did not possess "a significant number of documents responsive to the Subpoenas"; and Ms. Guo needed to search electronic documents for responsive records and then have them translated for review and production. The motion for extension of time did not raise any issues or concerns related to the meaning or directives contained in the Order Compelling Production.

On February 13, 2023, the Bankruptcy Court entered an order: (1) directing the HK Parties to show cause why they should not be held in contempt, (2) scheduling a hearing for March 7, 2023, and (3) requiring the HK Parties to "file a sworn declaration on the docket of this case detailing full compliance with the Order Compelling Production or, failing that, describing in detail the efforts taken to comply" by 5:00PM on March 6, 2023.[4] The Bankruptcy Court further advised that the "HK Parties must file prior to the hearing proof of their compliance or diligent attempt to comply with the Order Compelling Production. The HK Parties and the Trustee are encouraged, however, to work out a consent order establishing deadlines for production, in which case the hearing may not need to be held."

---

[4] In the Order finding the HK Parties in contempt and sanctioning Appellants, the Bankruptcy Court explained that the February 13, 2023 Order was issued, in part, in reliance upon the HK Parties' representations that production was soon to begin and would be made on a rolling basis. *See In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537 at 5. Neither representation turned out to be accurate, which the Bankruptcy Court found to be at best, a material misrepresentation, or at worst, a deliberate falsehood.

On March 6, 2023, the Trustee filed an opposition to the HK Parties' Motion for Extension of time, and therein represented that, despite their indication that they would be producing documents on a rolling basis, the HK Parties had not produced any additional documents. Thereafter, at approximately 8:15PM, three hours past the deadline set by the Bankruptcy Court, Attorney Vartan filed a declaration on the docket on behalf of the HK Parties wherein he chronicled their compliance with the Order Compelling Production purportedly as required by the Bankruptcy Court's February 13, 2023 Order. Specifically, Attorney Vartan explained that on February 20, 2023, counsel searched Ms. Guo's email, including the accounts she used for HK USA, as well as her phone and messaging applications, but cautioned that Ms. Guo had few documents to produce because she did not have access to materials that pre-dated her arrival in the United States in 2017 and that because of her experience being detained by the Chinese Communist Party, she does not regularly maintain electronic documents or communications due to fear of monitoring or hacking. At approximately 8:30PM on March 6, 2023, the HK Parties also made a supplemental production of eleven documents to the Trustee pursuant to the subpoena. The Bankruptcy Court denied the motion for extension of time at a hearing held on March 7, 2023, during which the Bankruptcy Court also heard the parties on the Order to Show Cause.

On March 10, 2023, the Bankruptcy Court held the HK Parties in contempt and sanctioned the HK Parties and Attorney Vartan and his firm pursuant to the Bankruptcy Court's inherent contempt powers and Fed. R. Civ. P. 37(b)(1) & (b)(2). In so doing, the Bankruptcy Court did not credit Attorney Vartan's declaration, because it had come from counsel and not the HK Parties as had been ordered.[5] Further, the declaration was silent as to HK USA's efforts to comply with the

---

[5] The Bankruptcy Court also observed, and rightly so, that it was not required to consider the Vartan Declaration at all insofar it was not timely filed. *See In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537 at 14.

Order Compelling Production and did not specify what electronic documents or devices were in Ms. Guo's custody, possession, and control. Neither did the Bankruptcy Court credit the declaration that the two email accounts that Chiesa Shahinian & Giantomasi PC accessed were designed solely for communicating with counsel. The Bankruptcy Court also found that the search terms were either poorly chosen or designed to avoid identifying responsive documents and, lastly, rejected the representation that Ms. Guo had limited access to her own bank accounts.

The Bankruptcy Court held Appellants jointly and severally liable and by way of sanction awarded reasonable attorneys' fees and costs to the Trustee for his efforts to secure compliance with the subpoena and for prosecuting the motion to compel. The Bankruptcy Court ordered the Trustee to submit his fees and costs application by March 24, 2023 and that the HK Parties purge their contempt by March 14, 2023.

On March 13, 2023, Ms. Guo and HK USA filed separate declarations, repeating the representations made by Attorney Vartan in his March 6, 2023 declaration. On April 10, 2023, after two extensions, the Trustee filed his fee application. On April 21, 2023, the Bankruptcy Court entered the sanctions order and awarded Appellee $83,370.36. On April 28, 2023, Appellants filed a motion for reconsideration of the sanctions order, to include the amount of the fees awarded, which was denied.

Appellants filed a timely appeal. On June 6, 2023, Appellants filed a motion to stay pending appeal the Sanctions Order, *see* ECF No. 28, which this Court granted, absent objection, on June 30, 2023. *See* ECF No. 29.

**Standard of Review**

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). The orders holding the HK Parties in contempt and

setting a sanctions amount against Appellants constitute final orders for the purposes of § 158(a). *See In re Fugazy Express, Inc.*, 982 F.2d 769, 775–76 (2d Cir. 1992); *Lothian Oil (USA), Inc. v. Sokol*, 526 F. Appx. 105, 107–08 (2d Cir. 2013).

"A bankruptcy court's award of sanctions, including findings of contempt, are reviewed for abuse of discretion." *In re Gravel*, 6 F.4th 503, 511 (2d Cir. 2021). A bankruptcy court "abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010)). A bankruptcy court's contempt power is "narrowly circumscribed" and therefore review of such an order "is more exacting than under the ordinary abuse-of-discretion standard." *Id.* (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003)). "The bankruptcy court's factual determinations are reviewed for clear error. . . . Questions of law and interpretation of an order underlying a contempt finding are reviewed *de novo.*" *Id.* (internal citation omitted).

**Discussion**

On appeal, Appellants challenge the Bankruptcy Court's Contempt and Sanctions orders as an abuse of direction because (1) the Order Compelling Production and the Order to Show Cause were vague and ambiguous, (2) the HK Parties complied or attempted to diligently comply with the Order Compelling Production, and (3) Appellants were given no opportunity to respond to the Trustee's fee request. The Court addresses each argument in turn.

**The Bankruptcy Court Did Not Err in Issuing the Contempt Order**

Appellants challenge the Bankruptcy Court's finding that its Order Compelling Production was clear and unambiguous. Specifically, Appellants contend that the Order failed to include instruction as to *how* to conduct their search for responsive documents[6] and was ambiguous insofar

---

[6] This argument is waived on appeal because it was not raised in the Bankruptcy Court, and thus, the Bankruptcy Court had no opportunity to consider such an argument when deciding whether to hold the HK Parties in contempt.

as it failed to specify what "agents" or "advisors" the HK Parties were required to consult in searching for responsive documents. Appellants also argue that the Order to Show Cause was vague or ambiguous as to whether a declaration from the HK Parties was required or whether Attorney Vartan's declaration was sufficient to detail the HK Parties' compliance with the Order Compelling Production. Appellee argues that both the Order Compelling Production and the Order to Show Cause were clear and unambiguous and contends that Appellants fail to demonstrate (or seriously argue) that the Bankruptcy Court's factual findings were clearly erroneous.

A bankruptcy court may hold a party in contempt for violating the court's injunction only "if there is *no fair ground of doubt* as to whether the order barred the [party]'s conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019). "In particular, a contempt order is warranted only where the party has notice of the order, the order is clear and unambiguous, and the proof of noncompliance is clear and convincing." *In re Gravel*, 6 F.4th at 512.[7]

*"Agents" and "Advisors" is Clear and Unambiguous*

The Court first concludes that the direction that the HK Parties produce documents in the "files of their current or former counsel and other agents and advisors" is clear and unambiguous. In so concluding, the Court notes that Appellants do not explain how "agents" or "advisors" are vague terms or how such vagueness interfered with their ability to comply with the Order Compelling Production; rather, Appellants merely assert that the Bankruptcy Court should not have ruled against them in the Contempt Order on this issue.

---

*See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011) ("Arguments raised for the first time on appeal are deemed waived."); *In re Markus*, 78 F.4th 554, 570 n.9 (2d Cir. 2023) (same); *In re Gordon*, 577 B.R. 38, 47 (S.D.N.Y. 2017) ("[A]ny arguments not raised in the bankruptcy court are considered waived; unless such waiver results in manifest injustice, the new arguments will not be considered on appeal."). The Court does not address this argument further because waiver does not result in manifest injustice to Appellants.

[7] There is no dispute here that Appellants had notice of all orders at issue in this appeal.

The Court first observes that at no point prior to the hearing on the Order to Show Cause did the Appellants raise any concern as to the meaning of the terms "agents or "advisors." Only when faced with a possible contempt sanction did they, for the first time, profess to not understand the scope of their obligations. For this reason, the Bankruptcy Court viewed this argument with appropriate skepticism. Indeed, Appellants' eleventh-hour assertion undermines their argument on appeal that these terms are vague and ambiguous.

Nonetheless, the terms "agents" or "advisors" are broad categories utilized to cover a large swath of potential people and entities who may have had responsive documents. That does not mean that the terms are vague or ambiguous, and in the context of this case, no contrary conclusion could be fairly reached. *See United States v. Christie Industries, Inc.*, 465 F.2d 1002, 1007 (3d Cir. 1972) (language of an injunction must be read in light of surrounding circumstances) (citing *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)); *Town of Islip v. Eastern Air Airlines*, 793 F.2d 79, 84 (2d Cir. 1986) ("[A] party to an action is not permitted to maintain, a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt.").

First, the text of the Order Compelling Production excludes from the documents to be produced (1) documents concerning the Lady May that may be in the possession of "current and former counsel and other agents and advisors" and (2) documents that "have already been produced by their current or former counsel and other agents and advisors." Second, as the Bankruptcy Court noted, the litigation history leading to the entry of the Order Compelling Production—particularly the January 20, 2023 deposition of Ms. Guo—makes clear that the intent of the order was to compel the production of responsive documents from entities within Ms. Guo's control that may have been unknown to her at the time of the deposition. *See* A-0009. *Cf. Gucci America, Inc. v. Weixing Li,*

768 F.3d 122, 143–44 (2d Cir. 2014) (reversing finding of contempt for bank's failure to produce documents related to defendants named in a subsequent pleading where subpoena sought documents from "Defendants" because the subpoena did "not define 'Defendants' in an open-ended fashion to include all newly-named defendants in the case"). The breadth of the statement "current and former counsel and other agents and advisors" aligns with the purpose of the subpoena, *i.e.*, to assist the Trustee in identifying and finding potential assets of the bankruptcy estate, which had revealed itself to be a Herculean task indeed given the attempts to thwart those efforts by Appellants. For example, the Order Compelling Production was only sought after the HK Parties, in their initial objections to the subpoena, refused to search for or provide any documents that were not related to known assets. *See* A-0107 ("Ms. Guo Objects to instruction number 12 to the extent that it purports to require Ms. Guo to undertake an investigation or analysis to ascertain the identity of all affiliates of the as defined Entities. Ms. Guo will not undertake such an investigation or analysis and *limits her response to the Trustee's Requests for Production to entities and affiliates known to her*.") (emphasis added); A-0130 (same as to HK USA). Moreover, as the Bankruptcy Court noted, the text of the Order Compelling Production was crafted after extensive argument by both the Trustee and counsel for the HK Parties, Zeisler, who raised no issue as to what the Order Compelling Production required their clients to do. Indeed, as observed above, it was not until Attorney Vartan appeared for the HK Parties, and after the HK Parties were on clear notice that they risked being held in contempt and sanctioned, did the HK Parties raise an ambiguity argument as to what "agents" and "advisors" included. With this context, there is no fair ground of doubt as to the meaning of "documents in the files of their current or former counsel and other agents and advisors." Having so concluded, the Bankruptcy Court was well within its

discretion to reject this after-the-fact attempt to justify non-compliance with the Court's Order Compelling Production.

*The Order to Show Cause Was Clear and Unambiguous*

The Court next concludes that the Order to Show Cause, directing "the HK Parties [to] file a sworn declaration on the docket of this case detailing full compliance with the Order Compelling Production or, failing that, describing in detail the efforts taken to comply," was clear and unambiguous. Appellants argue that it was not clear whether the HK Parties, and not counsel on behalf of the HK Parties, had to file the sworn declaration. The Court disagrees.

The Order to Show Cause, by its plain language in the second paragraph, defines the HK Parties as HK USA and Ms. Guo. *See In re Kwok*, 22-50073 (JAM) (Bankr. D. Conn. Feb. 13, 2023), ECF No. 1455 at 1. And it would have been a completely unreasonable interpretation of "HK Parties" to include counsel for the HK Parties. It was the parties who were subject to the subpoena and the Order Compelling Production and whose unrelenting intransigence over many months in complying with the subpoena and the Order Compelling Production gave rise to the motion for contempt in the first instance. Any suggestion or argument that an affidavit from counsel would be sufficient to satisfy the Bankruptcy Court's obvious concerns regarding their clients' conduct is unsupportable on this record.

Appellants note that the Trustee and the Bankruptcy Court did not raise an issue with the subsequent declarations sworn by HK USA and Ms. Guo, which largely mirror Attorney Vartan's declaration, and that this evinces a mere misunderstanding over the form of the declaration required, thus precluding a finding of contempt. This argument misses the point. Whether subsequent efforts to cure the contempt were or were not met with objection does not have any bearing on the whether the contempt occurred in the first instance. Again, Appellants' argument

fails to acknowledge the preceding months of effort and litigation by the Trustee to secure the HK Parties' compliance with the subpoena. As the Supreme Court recently emphasized, a party's bad faith and "record of continuing and persistent violations and persistent contumacy justifie[s] placing the burden of any uncertainty in the decree . . . on [the] shoulders of the party who violated the court order." *Taggart*, 139 S. Ct. at 1802 (internal quotation marks omitted). As discussed, the subpoena sought information from the HK Parties, not counsel. The Order Compelling Production required the HK Parties, not their counsel, to produce documents. It was therefore the HK Parties, not counsel, that risked a contempt finding. To the extent that any ambiguity could be located in the Order to Show Cause, the circumstances leading to the Order to Show Cause, after the Order Compelling Production was not complied with, makes evident that a declaration from counsel (and not the parties who would be under threat of perjury) was insufficient to comply with the Bankruptcy Court's order. *See, e.g.*, *Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 448–449 (W.D.N.Y.1997) (in the summary judgment context, "[a]n attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party.") (citing *United States v. Bosurgi*, 530 F.2d 1105, 1111 (2d Cir. 1976)). The Court concludes that there is no fair ground of doubt as to the meaning of the Order to Show Cause that "the HK Parties . . . file a sworn declaration on the docket" and what was required of the HK Parties to comply.

*Proof of Noncompliance is Clear and Convincing*

Appellants argue that the HK Parties took significant steps to comply with the Order Compelling Production and the Order to Show Cause, as detailed in Attorney Vartan's declaration, and that the Bankruptcy Court categorically dismissed these efforts. Appellee contends that Appellants fails to meaningfully address or challenge the Bankruptcy Court's numerous factual findings that the HK Parties did not diligently attempt to comply with the Order Compelling

Production and the Order to Show Cause in a reasonable manner. The Court concludes that the Bankruptcy Court's findings as to the HK Parties' noncompliance is amply supported by clear and convincing evidence in the record.

*In re Markus*, 78 F.4th 554 (2d Cir. 2023) is instructive. In that case, after a pattern of not complying with discovery obligations, a subpoena requesting over twenty categories of documents from the debtor was issued to her attorney. The subpoena requested "all documents that [the debtor], or any of [her] present or former agents, attorneys, assigns, consultants, employees, and/or successors possess, control or can access in the ordinary course of business." *Id.* at 559. The attorney made no effort to obtain responsive documents and instead moved to quash the subpoena. The attorney "represented to the bankruptcy court that he would comply, but he ultimately made no production, asserting that he had no responsive documents in his possession." *Id.* Thereafter, the bankruptcy court denied the motion to quash the subpoena and ordered the attorney to communicate with his client and her agents to obtain and produce responsive documents to the extent they were with his client's "possession, custody, or control" and required the attorney and his client to complete production of all responsible documents "to the extent the documents are in their possession, custody, or control." *Id.* at 559–60. The attorney produced no documents by the deadline, objecting to the request as exceeding the scope of allowable discovery, and argued for the first time that he understood the scope of the subpoena to be territorially limited. *Id.* at 560. Even though the production order directed the attorney to immediately communicate with his client and her agents, "it was apparent that [he] had not done so, as he did not know—'one way or the other'—whether they had any responsive documents." *Id.* The Second Circuit concluded that the bankruptcy court did not abuse its discretion in sanctioning the attorney. *Id.* at 566.

Likewise, here. The subpoenas were served in August 2022. The HK Parties largely objected to the subpoena and produced some discovery in September 2022. In late October 2022, after unsuccessful meet and confers, the Trustee filed a motion to compel. The HK Parties objected, stating that they were not in possession of responsive documents. The Bankruptcy Court held a hearing with the parties in November 2022 on the motion to compel. The Order Compelling Production was issued on January 20, 2023, giving the HK Parties ample time to search for responsive documents in the interim. The deadline for compliance with the Order Compelling Production passed and the HK Parties still failed to turn over any documents, at which point Attorney Vartan represented that they would "begin" production on a rolling basis and requested an extension of time. The Bankruptcy Court issued an Order to Show Cause, wherein it set another deadline of March 6, 2023 by 5:00PM for the HK Parties to comply, "an extension of over a month from the deadline set by the Order Compelling Production and almost seven months since the Subpoenas were served." *In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537 at 19. Finally, a few hours *after* the deadline set in the Order to Show Cause, the HK Parties did finally turn over eleven more documents—which demonstrates the inaccurate nature of the assertion that the HK Parties were not in possession of responsive documents.

Attorney Vartan also filed a declaration purporting to detail the HK Parties' compliance with the Order to Show Cause, but, as detailed by the Bankruptcy Court: (1) it was not a declaration of Ms. Guo or HK USA; (2) the declaration stated nothing about HK USA's attempt to comply; (3) the declaration did not make clear what electronic documents or devices were in Ms. Guo's custody, possession, or control; (4) the declaration took at face value the representation that Ms. Guo only maintains three email accounts; (5) the search terms were poorly chosen or designed to avoid discovery; (6) the declaration does not explain why Ms. Guo's communications with her

family were "atypical" and does not detail Ms. Guo's communications with current or former counsel and other agents and advisors; (7) the declaration does not detail the nature of the hard copy documents Ms. Guo retained or any search of such documents; (8) the declaration's statements as to Ms. Guo's bank accounts were insufficient; and (9) the declaration states nothing about the search for or production of documents under her control but in the possession of her current or former counsel and other agents and advisors, which was expressly directed in the Order Compelling Production.

Appellants only take issue with the Bankruptcy Court's finding that the search terms were insufficient to produce responsive documents and make the same argument to this Court that they made to the Bankruptcy Court: that they substantially complied because Ms. Guo does not use email or other online applications because of her concerns over hacking. Appellants do not, and perhaps cannot, refute with citation to the record evidence or otherwise challenge the breadth of factual findings made by the Bankruptcy Court in deciding to hold the HK Parties in contempt.

It is abundantly clear upon review of the record that the Bankruptcy Court issued its finding that the HK Parties were in contempt of court only after many months of hinderance and delay on the part of the HK Parties and after the HK Parties had been given ample opportunity to change course and correct their misconduct. Accordingly, the Bankruptcy Court's factual findings are supported by clear and convincing evidence and the Bankruptcy Court did not abuse its discretion by finding the HK Parties in contempt. *See, e.g.*, *In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 WL 4654698, at *7 (D. Conn. Sept. 27, 2018) (finding no abuse of discretion by bankruptcy court in finding debtor in contempt for failure to comply with subpoena and subsequent court orders where factual basis for the contempt order was supported by clear and convincing evidence to include emails and debtor's testimony which demonstrated debtor's noncompliance with "subpoena but

also strongly indicated that [debtor's] court-ordered certification of compliance was false or at least misleading"); *Gesualdi v. Hardin Contracting Inc.*, No. 09-cv-0683 (SJF)(AKT), 2016 WL 2654068, at *2 (E.D.N.Y. May 6, 2016) (finding non-party in contempt where plaintiffs "have submitted clear and convincing proof that [non-party] has failed, without adequate excuse, to obey the subpoena . . . and this Court's various orders related to it, all of which were clear and unambiguous"). Accordingly, because the record supports a finding by clear and convincing evidence as to the HK Parties' "deliberate and repeated failure to comply with the bankruptcy court's orders, . . . the bankruptcy court did not abuse its discretion in determining that civil contempt sanctions were appropriate and in imposing them against" the HK Parties. *In re Markus*, 78 F.4th at 568.

### The Bankruptcy Court Did Not Err in Issuing the Sanctions Order

Appellants also argue that the Bankruptcy Court erred in sanctioning them pursuant to Fed. R. Civ. P 37(b)(2) because the HK Parties complied with the underlying orders and that there is no basis on the record to suggest that Attorney Vartan and his firm made a material misrepresentation such that they should also be sanctioned pursuant to Fed. Civ. P. 37(b)(c). As discussed above, the Court has concluded that the HK Parties did not comply with the underlying orders. The Court does not further address this aspect of Appellants' argument.

The Bankruptcy Court did not abuse its discretion when issuing the Sanctions Order. "Where the Bankruptcy Court finds sanctionable conduct, it has broad discretion in fashioning a sanction appropriate to the circumstances." *In re Martin*, 208 B.R. 807, 811 (N.D.N.Y. 1997), *aff'd sub nom. Martin v. Schaap Moving Sys., Inc.*, 152 F.3d 919 (2d Cir. 1998). Appellants merely repeat the arguments they made to the Bankruptcy Court without explaining why the Bankruptcy Court's Sanctions order was an abuse of discretion.

Having already concluded that the Bankruptcy Court's finding that the HK Parties did not comply with either the Order Compelling Production nor the Order to Show Cause was amply supported by clear and convincing evidence and that the finding of contempt based thereupon was not an abuse of discretion, the Court likewise concludes that the Bankruptcy Court was well within its discretion in finding that the conduct of both the HK Parties and Attorney Vartan and his firm was sanctionable. In addition to the discussion above regarding the Bankruptcy Court's determination not to credit Attorney Vartan's declaration in light of its numerous deficiencies, the Court observes that the Bankruptcy Court's decision was made in no small part because of the affirmative misrepresentations and actions by Attorney Vartan and his firm when seeking an extension of time to comply with the Order Compelling Production. *See In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537 at 23 (finding that Attorney Vartan and his firm, at best, made a material misrepresentation that they would proceed with production, or at worst, knowingly made false statements, *i.e.* lied, to the Court in the motion for extension of time, and that such was "part of a pattern of unacceptable, obstructionist behavior" of Attorney Vartan and his firm.). Indeed, the Bankruptcy Court relied upon the representations of counsel in crafting the Order to Show Cause. *Compare* A-0208 (stating that "Ms. Guo and HK USA would begin producing documents as early as next week and would continue to produce documents on a rolling basis"), *with In re Kwok*, 22-50073 (JAM) (Bankr. D. Conn. Feb. 13, 2023), ECF No. 1455 at 2 ("Based on the representations of counsel for the HK Parties in the Motion for Extension of Time, the Court expects that the HK Parties will be producing documents to the Trustee on a rolling basis during the ongoing mediation"). Yet, despite this representation, it is undisputed that no documents were produced as promised, nor were documents produced on a rolling basis while the parties' mediation was ongoing. Notwithstanding, and of significant concern to the Bankruptcy Court,

Attorney Vartan maintained that no misrepresentation had been made, prompting the Bankruptcy Court to warn Attorney Vartan that he could be subject to Rule 11 sanctions for his misconduct. *See In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 10, 2023), ECF No. 1537 at 24. And as Ms. Guo's deposition testimony illustrates—which was taken the same day the Order Compelling Production was issued and twenty-one days before the motion for extension of time was filed—it was clear that, at the very least, Ms. Guo possessed responsive documents which had not yet been turned over. *See* A-00852 ("A: I have an NDA with every single one of my crew. Q: Have you produced all of those documents? A: I don't recall. Q: Do you have any NDAs with any crew member prior to May 28, 2021? A: I think so. Q: I'll represent to you that your counsel has not produced any such documents."). On this record, it was not an abuse of discretion to sanction Attorney Vartan and his firm.

*Due Process*

The Court also rejects the argument that the Sanctions Order was entered without due process. To be clear: Appellants do not dispute that they were afforded due process insofar as they had adequate notice that sanctions would be imposed. Rather, Appellants take issue with not being afforded the traditional twenty-one days to object to the Trustee's fee request after the Bankruptcy Court concluded that fees as a sanction would be appropriate under the circumstances. Appellee argues that the rule relied upon as affording Appellants twenty-one days to respond to the fee request is not applicable. The Court need not reach this issue as it is clear that no due process violation occurred.

The Second Circuit has explained that "[a]lthough a party facing compensatory sanctions is not necessarily entitled to an evidentiary hearing with respect to the amount of proposed sanctions, . . . due process requires, at a minimum, that: (1) the party seeking to be compensated

provide competent evidence, such as a sworn affidavit, of its claimed attorney's fees and expenses; and (2) the party facing sanctions have an opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses." *Mackler Productions, Inc. v. Cohen*, 225 F.3d 136, 146 (2d Cir. 2000).

For example, the U.S. Bankruptcy Appellate Panel of the Ninth Circuit held that a bankruptcy court erred by not affording a party facing sanctions "an opportunity to object to the amount of attorney's fees awarded to [the] Trustee." *In re Badea*, 2019 WL 1070838, at *6 (9th Cir. B.A.P. Cir. Mar. 5, 2019). In *Badea*, although the bankruptcy court indicated to the debtor that he would have an opportunity to object to the reasonableness of the attorney's fees, the bankruptcy court entered the fee order without providing "a procedure for opposing the reasonableness and calculation of the sanction" and "made no findings to support that the fees were reasonable." *Id.* Here, the Bankruptcy Court approved Appellee's fee application before Appellants objected to the reasonableness of the fees sought.[8]

Whether the award, at the time it was issued, violated Appellants' due process rights, this Court need not decide. After the award was issued, Appellants filed a motion for reconsideration, wherein they were able to advance, and did advance, a number of challenges to the amount of the fee award. Indeed, Appellants made the same arguments to the Bankruptcy Court as they do here as to the reasonableness of the fees sought. The Bankruptcy Court considered and rejected Appellants' arguments. Thereafter, Appellants sought a stay pending appeal of their obligation to pay the fee to Appellee, making identical arguments as to the reasonableness of the fees. The

---

[8] The Court cannot say definitively that Appellants did not have the opportunity to be heard in the constitutional sense. The award was issued eleven days after the request was submitted, during which time Appellants could have filed an objection. Because the Court recognizes that Appellants believed they would be given twenty-one days to object and no alternative briefing schedule had been ordered to suggest otherwise, the Court looks beyond this issue to determine the due process question.

Bankruptcy Court again considered Appellants' arguments and rejected them. Thus, although giving Appellants either the traditional twenty-one days to respond to the fee application, or setting a specific briefing schedule for a response might be the better practice, the Court cannot conclude that the purported denial, *see supra* n.8, of the opportunity to object to the fee application violated Appellants' due process rights when the Bankruptcy Court considered and rejected Appellants' arguments as to the amount and reasonableness of Appellee's fees on the motion for reconsideration as well as the motion to stay pending appeal. The Bankruptcy Court had before it a fee application fully supported by sworn affidavits and other evidence, was intimately familiar with the nature and scope of Appellee's work and efforts in securing compliance with the subpoena, and made the requisite findings as to the amount of fees sought and the reasonableness of counsels' hourly rates.

Further, remand at this juncture to direct the Bankruptcy Court to re-assess the proper amount of fees in light of Appellants' arguments would be a waste of judicial resources. Appellants provide no argument as to why the Bankruptcy Court would reach a different conclusion on remand from this Court than it already did when it considered and rejected Appellants' identical arguments in denying the motion for reconsideration and the motion to stay pending appeal.

*Fee Amount*

The Bankruptcy Court's award of fees will not be reversed by the district court absent an abuse of discretion. *See In re JLM, Inc.*, 210 B.R. 19, 23 (2d. Cir. B.A.P. 1997); *In re Raytech Corp.*, 241 B.R. 785, 788 (D. Conn. 1999). An abuse of discretion occurs where the Bankruptcy Court (1) fails to apply the proper legal standard or follows improper procedures in determining the award or (2) bases its award on findings of fact that are clearly erroneous. *In re JLM*, 210 B.R. at 23. "Bankruptcy courts enjoy wide discretion in determining reasonable fee awards." *Id.*

In determining the amount of compensation an attorney should receive, the Court should consider "the nature, the extent, and the value of such services, taking into account all relevant factors including" the time spent, the rate charged for such services, whether the services were necessary or beneficial at the time they were rendered, whether the services were performed within a reasonable amount of time, and whether the compensation is reasonable based on the "customary compensation charged by comparably skilled practitioners." 11 U.S.C. § 330(a)(3).

Upon review of the full appellate record, the orders and memoranda of decision of the Bankruptcy Court, the parties' arguments to this Court, and the statutory factors outlined above, it is clear that the Bankruptcy Court applied the correct legal standard and that the findings supporting the sanctions order are not clearly erroneous. To the contrary, the Court finds no error in the Bankruptcy Court's conclusions concerning the reasonableness of the attorney's fees awarded, especially in light of the complexity of the underlying bankruptcy proceeding and the protracted discovery dispute that precipitated the Sanctions order. Accordingly, the Bankruptcy Court did not abuse its discretion in granting the Special Fee Application in the amount of $83,370.26.

**Conclusion**

For the foregoing reasons, the Court AFFIRMS the orders of the Bankruptcy Court holding the HK Parties in contempt and awarding fees to Appellee as an appropriate sanction against Appellants. The stay previously entered at ECF No. 29 is hereby lifted. The Clerk of the Court is directed to enter Judgment in favor of Appellee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of April 2024.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE